UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FELIX BERRIOS,
    Petitioner,

v.

UNITED STATES,
    Respondent.

No. 3:10cv113 (SRU)

## RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Felix Berrios, appearing *pro se*, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Berrios raises two claims in his petition. He first argues that his sentence is erroneous under the holding announced in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008). Berrios was subject to a greater offense level under the United States Sentencing Guidelines because he had been convicted twice previously of a "controlled substance offense" in Connecticut state court. *See* United States Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(a)(2) (2004) (establishing base offense level of 24 if defendant unlawfully possessed a firearm "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense"). According to Berrios, *Savage* prohibits the use of those offenses to enhance his sentence and, therefore, he is "'actually innocent' of the recidivist enhancement he received." Mot. under 28 U.S.C. § 2255 (doc. # 1). Berrios argues separately that his counsel was ineffective for failing to challenge his enhancement at sentencing, in violation of Berrios's Sixth Amendment right to effective assistance of counsel.

The government filed a response to Berrios's petition for habeas corpus and, later, a supplemental memorandum in opposition. The government raises a host of reasons why Berrios is not entitled to relief. For the purposes of deciding Berrios's petition, however, the court need only address the first, and main, argument that the government puts forward: that Berrios's

petition is untimely under 18 U.S.C. § 2255(f).

I.     **Background**

On July 7, 2004, a federal grand jury returned a superseding indictment against Berrios charging him with having knowingly possessed a handgun following a felony conviction, in violation of 18 U.S.C. § 922(g) & 924(a)(2).  The superseding indictment included a sentencing enhancement allegation that Berrios had possessed the charged firearm "in connection with another felony offense, namely possession with intent to distribute a controlled substance," as set forth in U.S.S.G. § 2K2.1(b)(5) (2004) (currently codified at § 2K2.1(b)(6)).  A jury trial was held and, on August 20, 2004, Berrios was found guilty of the felon-in-possession charge.  The jury also found, by special interrogatory, that Berrios had possessed the weapon in connection with another felony offense, namely, possession with intent to distribute a controlled substance.

Under the Sentencing Guidelines, Berrios faced a sentencing range of 140 to 175 months' imprisonment: Berrios faced a base offense level of 24 because of prior controlled substance convictions in 1990 and 1994, respectively, U.S.S.G. § 2K2.1(a)(2) (2004); a four-level enhancement because he possessed the firearm in the course of another felony offense, *id.* § 2K2.1(b)(5) (2004), resulting in an adjusted offense level of 28; and, in light of Berrios's lengthy criminal history, he fell within criminal history category VI.  Berrios's offense carried a ten-year maximum term of imprisonment, however.  18 U.S.C. § 924(a)(2) (2004).  On February 10, 2005, Berrios was sentenced to that maximum punishment, as well as to three years' supervised release and a special assessment of $100.  Berrios's judgment entered on February 14, 2005.  Judgment (3:04cr128 (SRU), doc. # 68).

Berrios filed a timely appeal, and the Court of Appeals affirmed the judgment on March 16, 2006.  *United States v. Berrios*, 170 F. App'x 760 (2d Cir. 2006) (summary order).  Berrios did not petition the United States Supreme Court for a writ of certiorari, and his judgment

became final 90 days later, on June 14, 2006.  *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005) (explaining that a conviction becomes final 90 days after an appellate court's decision, "i.e., after the period in which a litigant can petition for a writ of certiorari from the United States Supreme Court").  On March 22, 2007, Berrios filed a motion for an extension of time to file his habeas corpus petition, claiming that his trial and appellate counsel failed to send him necessary court documents.  (3:04cr128 (SRU), doc. # 81).  The court denied Berrios's motion for an extension of time on March 28, 2007, citing its lack of jurisdiction to grant the motion.  (3:04cr128 (SRU), doc. # 82.)  *See generally United States v. Leon*, 203 F.3d 162 (2d Cir. 2000) (per curiam) (holding that district court lacks jurisdiction to grant motion for an extension of time until prisoner files petition for habeas corpus).  The court further advised Berrios to "immediately file a petition raising whatever claims he wishes to raise by way of a section 2255 motion," lest his limitation period expire.  *Id.*  Berrios did not file his habeas corpus petition until January 20, 2010, and it was docketed six days later.

**II.     Discussion**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitation period for section 2255 petitions, however, in order to "bring finality to federal court proceedings."  *Rivera v. United States*, 719 F. Supp. 2d 230, 232 (D. Conn. 2010) (citing *Johnson v. United States*, 544 U.S. 295, 309 (2005)).  That one-year period runs from the later of:

> (1) the date on which the judgment of conviction becomes final . . .

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2255(f). It is uncontested that, absent tolling, Berrios's petition must be denied as untimely because it was filed well after his one-year limitation period expired.

Berrios contends that tolling is appropriate in his case. Specifically, he posits that he should benefit from equitable tolling on account of his "actual innocence" of the two prior controlled substance offenses that led to his enhanced sentence. What Berrios means by "actual innocence" is not clear, and is susceptible to at least two interpretations. First, Berrios might mean what he literally says: that he did not commit the two controlled substance crimes that increased his base offense level. Alternatively, Berrios might be asserting that, in light of *Savage*, the court should not have increased his base offense level on account of the controlled substance offenses. In the second interpretation, "actual innocence" does not mean factual innocence, but that his prior convictions should not have been used to his detriment under the Sentencing Guidelines. Understood that way, Berrios is arguing that he is entitled to tolling because *Savage* retroactively altered his Guidelines offense level calculation.

In either case, Berrios is not entitled to the equitable tolling he seeks, and his petition must be dismissed as untimely. I address each potential interpretation individually.

A. <u>Actual Innocence</u>

Because AEDPA's one-year limitation period is not a jurisdictional bar, equitable tolling is available under the statute. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). But "[e]quitable tolling applies only in the rare and exceptional circumstance." *Id.* (quotation omitted).

> To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll.  To show that extraordinary circumstances prevented him from filing his petition on time, petitioner must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.  Hence, if the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.  In a case where the alleged extraordinary circumstances ceased early in the limitations period, we inquire whether the petitioner diligently pursued his application in the time remaining.

*Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (internal quotation marks and citations omitted).  The class of extraordinary circumstances warranting equitable tolling under AEDPA is narrow.

> The rare exceptions involve a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, *see Valverde v. Stinson,* 224 F.3d 129, 133 (2d Cir. 2000); an attorney's egregious failure to file a habeas petition on a prisoner's behalf despite explicit directions from his client to do so, *see Baldayaque* [*v. United States*]*,* 338 F.3d [145,] 150-53 [(2d Cir. 2003)]; and a state appellate court's failure to inform a prisoner that leave to appeal was denied, *see Diaz* [*v. Kelly*]*,* 515 F.3d [149,] 154-55 [(2d Cir. 2008)].

*Rivera*, 719 F. Supp. 2d at 234; *accord Adkins v. Warden*, 585 F. Supp. 2d 286, 296 (D. Conn. 2008), *aff'd*, 354 F. App'x 564 (2d Cir. 2009) (summary order), *cert. denied*, 131 S. Ct. 262 (Oct. 4, 2010).

The Second Circuit has not decided whether a petitioner's actual innocence warrants equitable tolling of AEDPA's one-year limitation period.  *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004); *accord Friedman v. Rehal*, 618 F.3d 142, 152 (2d Cir. 2010) (assuming that "[a] claim of actual innocence could provide a basis for excusing this late filing even though petitioner pled guilty," but determining that petitioner was not entitled to relief on the merits).

Although it remains an open question whether a petitioner such as Berrios is entitled to equitable tolling on the basis of his actual innocence, the Court of Appeals has:

> instructed district courts faced with untimely petitions in which the petitioner asserts his or her actual innocence to determine, in each case, whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence.

*Menefee*, 391 F.3d at 161.  It is only after a district court has determined that the petitioner has a credible claim of actual innocence that it may reach the more difficult issue whether AEDPA permits equitable tolling based on such a showing.  *See, e.g.*, *Whitley*, 317 F.3d 223, 225-26 (2d Cir. 2003) (remanding to district court with instruction to decide whether actual innocence is a basis for equitable tolling only if petitioner made a credible claim of innocence).

It is the petitioner's burden to produce evidence establishing a credible claim that he is actually innocent.  "In order to demonstrate actual innocence in a so-called collateral proceeding, a petitioner must present 'new reliable evidence that was not presented at trial' and 'show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.'"  *Lucidore v. Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (quoting *Schlup v. Delo*, 513 U.S. 298, 299, 327-28 (1995)).  "The petitioner must support his claim 'with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.'"  *Menefee*, 391 F.3d at 161 (quoting *Schlup*, 513 U.S. at 324).  Moreover, "the standard . . . remains the same" when the petitioner is presenting a claim of innocence after pleading guilty to the challenged offense.  *Ludicdore*, 209 F.3d at 114.  That standard imposes a heavy burden on petitioners and, as a result, "credible claims of actual innocence are 'extremely rare.'"  *Menefee*, 391 F.3d at 161 (quoting *Schlup*, 513 U.S. at 321).

Berrios has put forward no evidence to support the claim that he is actually innocent of his prior controlled substance offenses. Indeed, Berrios offers nothing other than the assertion that he is actually innocent. *See* Mot. under 28 U.S.C. § 2255 at 4-5 (arguing that, based on *Savage* and related cases, "[c]learly the convictions relied upon in the PSR cannot be deemed 'controlled substance [offenses]' and render petitioner 'actually innocent' of the recidivist enhancement he received"); *id.* at 13 ("It is respectfully submitted that petitioner's actual innocence of the recidivist enhancement imposed in this case will 'equitably toll' the one[-]year statute of limitation period.").

By contrast, despite it not being the respondent's burden to disprove Berrios's innocence, the government has introduced evidence that is probative of Berrios's guilt. Attached to the government's supplemental opposition memorandum are court filings for Berrios's prior convictions. The first attachment concerns Berrios's 1990 conviction, and includes Berrios's substitute information, dated December 5, 1990, charging Berrios with possession with intent to sell or dispense cocaine, in violation of Conn. Gen. Stat. § 21a-277(a), as well as two docket sheets, one computerized and the other hand-written, showing that, on December 5, 1990, Berrios pled guilty to that single count information. Gov't Supp. Opp. Mem., attach. 1 at 1-3 (Doc. # 5). That evidence shows that, previously, Berrios admitted both his guilt and the conduct underlying his offense.

The second attachment, concerning Berrios's 1994 offense, is a transcript of Berrios's plea hearing. At the plea hearing's commencement, the prosecutor described the charges against Berrios in the state's substitute information. According to the information, police officers performed a search-and-seizure of a location where Berrios was present; in performing the search, officers found "various money, a bag containing fifty small clear plastic vials, five small

glassine envelops [*sic*], two other clear plastic bags with fifty small vials, a beeper, another clear plastic bag and other sorted drug related — drugs were field tested.  A portion of the white substance came back positive for cocaine." Gov't Supp. Opp. Mem., attach. 2 at 2.  At the plea hearing, Berrios did not agree that all of the drugs at the location were attributable to him.  Nevertheless, as the following colloquy between the court, Berrios, and an Attorney Dunn, Berrios's counsel, shows, Berrios admitted to having possessed some quantity of narcotics with the intent to distribute them.

> THE COURT:  Was the prosecutor's summary of what happened when she just reviewed the police report, is that a substantially accurate statement of what happened?
>
> MR BERRIOS:  No.
>
> THE COURT:  Okay.  Well —
>
> ATTY. DUNN:  Judge, just can I — sorry to interrupt you, judge.  Mr. Berrios . . . doesn't want to admit to all the drugs found in the house.  He was found in possession of what he says is five vials on his person and there was some drugs that extensively were being flushed down the toilet at the time and there was an admission but that's why he said no to the question. . . .
>
> THE COURT:  This is a straight plea though, right?
>
> ATTY. DUNN:  I explained to him because there were drugs found on his possession that an Alford plea might not be appropriate.  If the Court wants to entertain an Alford plea because he's saying it —
>
> THE COURT:  Let me just ask you this, Mr. — all you're pleading guilty to is possessing any quantity rather [*sic*] it's one vial or more but any quantity of drugs with intent to dispense them.  Do you admit to doing that or not?
>
> MR. BERRIOS:  Yes.

*Id.* at 5-6.  Moments later, based on that colloquy and Berrios's responses to the court's other questions, the court found Berrios's guilty plea "to be voluntarily and understandingly made with the assistance of counsel, there's a factual basis for the plea, and the plea is accepted and a

finding of guilty may enter." *Id.* at 7. The transcript shows that Berrios admitted his guilt and that he had possessed some quantity of narcotics with the intent to distribute them.

Berrios has not produced evidence proving his innocence, much less rebutting the government's evidence that he previously admitted to the same controlled substance offenses he now contests. *See Menefee*, 391 F.3d at 161 ("[T]he habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record."). Berrios has therefore failed to establish a credible claim of innocence. He has not shown that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt on his two controlled substance offenses. *Lucidore*, 209 F.3d at 114. Because Berrios has not established a credible claim that he was innocent of his prior convictions, the court need not consider whether AEDPA permits tolling based on a petitioner's actual innocence. *Menefee*, 391 F.3d at 160; *Lucidore*, 209 F.3d at 114. Even assuming that the court could toll AEDPA's limitation period on that basis, Berrios has not proven he is entitled to that relief. To the extent that Berrios seeks to toll the one-year limitation period by arguing he is actually innocent of his prior controlled substance offenses, his petition is dismissed as untimely.

      B.      <u>Retroactive Application of *Savage*</u>

If, in his petition, Berrios meant that his limitation period should be tolled because, under *Savage*, his prior convictions were not "controlled substance offenses" as defined in the United States Sentencing Guidelines, his petition must still be dismissed as untimely. In *Savage*, the Court of Appeals faced facts somewhat similar to those Berrios presents.[1] The defendant, Lavon

---

[1] Because Berrios's petition is untimely, the court need not decide the merits of Berrios's *Savage* claim. It would appear, however, that in light of Berrios's two guilty pleas to possession with intent to distribute, his case is distinguishable from *Savage*, where the defendant entered an

Savage, pled guilty to possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g), and at sentencing, the court determined that his base offense level was 24 under U.S.S.G. § 2k2.1(a)(2) because Savage had sustained a conviction of a crime of violence and a conviction of a controlled substance offense. 542 F.3d at 960-61. Savage's controlled substance offense arose from a 2002 conviction in which he entered an *Alford* plea to the sale of a controlled substance, in violation of Conn. Gen. Stat. § 21a-277(b). *Id.* at 960, 963. At sentencing and on appeal, Savage contended that the government had failed to prove that his 2002 conviction was a "controlled substance defense," as defined under the Sentencing Guidelines. Based on the evidence introduced at sentencing, the Court of Appeals agreed. Because Connecticut's definition of a "sale" of controlled substances includes conduct not covered by the Sentencing Guidelines' definition of a "controlled substance offense," *id.* at 965-66, the government could not prove that the 2002 conviction met the Guidelines' criteria based on Savage's *Alford* plea, in which he did not admit to committing the underlying criminal conduct, or on Savage's charging document, which did not narrow the definition of "sale." *Id.* at 966-67.

Berrios appears to claim that *Savage*, which was rendered on September 18, 2008, more than two years after Berrios's judgment became final, has retroactive effect and, moreover, tolls AEDPA's limitation period. The government has conceded, for the sake of its argument opposing Berrios's petition, that *Savage* applies retroactively and that prisoners may benefit from the decision in post-conviction. Gov't Supp. Opp. Mem. at 15-16. Nevertheless, the government maintains that the court cannot reach the merits of Berrios's petition because it is untimely.

---

*Alford* plea to the sale of narcotics.

I agree with the government's position.  To begin, Berrios does not argue that the timeliness of his position is governed by 18 U.S.C. § 2255(f)(3), which provides that a petitioner may move to vacate, set aside, or correct his sentence within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  Nor could Berrios make such an argument.  *Savage* represents a decision by the Second Circuit Court of Appeals, and not the United States Supreme Court.  *See Dodd v. United States*, 545 U.S. 353, 358-59 (2005) (explaining that, according to section 2255(f)(3)'s plain language, "if *this Court* decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from this Court's decision within which to file his § 2255 motion" (emphasis added)).  And, even if Berrios could benefit from section 2255(f)(3), his petition would still be untimely.  Berrios would have had until September 18, 2009 to move for habeas relief, yet his petition was filed until January 2010.  Thus, Berrios would still need to toll AEDPA's one-year limitation period.

As stated above, in order to benefit from equitable tolling, Berrios must demonstrate that "extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll."  *Hizbullahankhamon*, 255 F.3d at 75.  Furthermore, Berrios must establish that extraordinary circumstances caused him to miss his filing deadline, despite his reasonable diligence.  *Id.*  Berrios has not identified any extraordinary circumstance causing his delay and justifying equitable tolling.  He has not alleged, much less proven, that he was denied access to legal papers, was subject to egregious misconduct by his attorney, has language difficulties, experienced unusual and lengthy delays in

receiving court documents, or had to overcome any other "severe" obstacle preventing him from filing a timely petition. *Diaz*, 515 F.3d at 154.

If Berrios is arguing that he is entitled to equitable tolling because *Savage* was decided after his conviction as final, he is mistaken. *Savage*'s postdating of Berrios's judgment does not qualify as such an extraordinary circumstance. "Change in . . . substantive law," which has not been made retroactive by the Supreme Court, does not warrant equitable tolling. *Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007). Nor does the "unavailability of beneficial caselaw" during a petitioner's one-year limitation period constitute an extraordinary circumstance for the purposes of AEDPA. *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 331 (W.D.N.Y. 2005). Finally, even if the unavailability of *Savage* were to be considered an extraordinary circumstance warranting equitable tolling, Berrios has not explained why he failed to file his habeas corpus petition within one year of the Court of Appeals' decision. There is no other cited obstacle that caused Berrios to miss his filing deadline. To the extent Berrios relies on the circumstances of his imprisonment, such as his irregular access to a law library, to argue for the application of equitable tolling, his petition must be dismissed. "'[T]he difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, generally do not by themselves qualify as extraordinary circumstances.'" *Adkins*, 585 F. Supp. 2d at 296 (quoting *Corrigan*, 371 F. Supp. 2d at 330).

In sum, even assuming that Berrios could benefit from *Savage*'s retroactive effect, his motion is untimely. Because *Savage* is a decision by the Court of Appeals and it was decided more than a year before Berrios filed his habeas corpus petition, Berrios's petition is not timely under 18 U.S.C. § 2255(f)(3). Nor is the late date of *Savage*'s decision an extraordinary

circumstance warranting equitable tolling — and, even if it were, Berrios has not come forward with any explanation why his petition was filed more than a year after the Court of Appeals' ruling. Under the second interpretation of Berrios's claim of "actual innocence," his petition is time-barred and his motion must be denied.

### III.   Conclusion

For the reasons set forth above, Felix Berrios's motion to vacate, set aside, or correct his sentence (doc. # 1) is DENIED as untimely. The clerk shall close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 20th day of August 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge